## McNEILL v. BOTTSFORD–DICKINSON CO.

(Supreme Court, Appellate Division, First Department.   November 13, 1908.)

1. MASTER AND SERVANT (§ 107*)—DEATH OF SERVANT—SAFE PLACE.
    The rule that a master is required to furnish a servant a reasonably safe place in which to work was inapplicable, where workmen were hauling beams to the third floor of a building, the walls and girders of which had not yet been constructed; the place being one which was constantly changing as the work progressed.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 200, 254, 255; Dec. Dig. § 107.*]

2. MASTER AND SERVANT (§ 121*)—DEATH OF SERVANT—LABOR LAW—"HOISTING APPARATUS."
    A gin pole, to which was attached a block and fall used to haul beams to the third floor of a new building, the walls and girders of which had not yet been constructed, was not a "hoisting apparatus," within Laws 1897, p. 468, c. 415, § 20, as amended by Laws 1899, p. 351, c. 192, providing that, if hoisting apparatus is used within buildings in process of construction, the contractors and owners shall cause the shafts and openings in each fall to be inclosed by a barrier.
    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 121.*]

Appeal from Trial Term, New York County.

Action by Annie McNeill, as administratrix of the goods, etc., of John McNeill, against the Bottsford-Dickinson Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

Frederick W. Catlin, for appellant.

Frank F. Davis (Raymond D. Thurber, on the brief), for respondent.

LAUGHLIN, J.   This is a statutory action to recover for the death of John McNeill, who was employed by defendant as a carpenter. Defendant was erecting a building at No. 100 Broad street, in Greater New York. At the time in question the walls, which were brick, had been constructed to an elevation about one foot above the third floor, and the girders, which were steel, had been set in place to the same height; but with the exception of these walls and girders the third floor had not been constructed, and, as is evident from these facts,

---

was entirely open between the girders, and between girders and walls, and no stairway had yet been erected. The day of the accident the decedent and one Bower, another carpenter, were engaged putting floor beams in place between the girders. The girders were 16 feet long and ran north and south. They rested on the brickwork. The floor beams were wooden timbers, 18 feet long, 1 foot wide, and 3 inches thick. They were only 10 inches apart, and ran at right angles to the girders, and rested on the flanges thereof. The evidence indicates that the beams were passed up from the floor below through the openings between the girders by laborers, and hauled up by decedent and his fellow workman by ropes attached to either end of the beam. When the beams had been put in place on each end of the opening between the girders where they were working at this time, so that only an opening of about 6 feet was left, the decedent and Bowers were directed by their foreman to obtain and place two planks across the beams to work upon. Two planks, 12 feet long and 2 inches thick and 10 inches wide, were passed up and were placed across the beams side by side, forming a platform the width and length of the planks, and leaving a rectangular opening, bordered by them and the nearest floor beams and one of the girders, about 5 by 6 feet in dimensions. This opening was over the place where the elevator shaft was to be constructed, and it was open through the lower floors to the bottom. On this platform formed by the two planks the decedent and Bower, assisted by the foreman, erected a gin pole extending over the opening, and from which a block and fall were suspended, by means of which floor beams were hauled up from the bottom.

It does not appear the foreman expressly directed the erection and use of the block and fall; but he assisted in the work, and saw the men using the block and fall, and helped deliver the material to be thus hauled up. The gin pole was securely placed, and the block and fall attached, about 11 o'clock in the forenoon, and from that time on until the accident, which occurred between 1:30 and 2 p. m., save the luncheon hour, the decedent and Bower were on this platform on the third floor, using the block and fall, hauling up beams and unloading them on that floor. The foreman and two laborers below would fasten the loose end of the rope suspended from the pulley to the center of a beam, and would then, assisted by decedent and Bower, haul the beam up by drawing a rope over a pulley; and when the beam was sufficiently elevated to clear the platform the decedent and Bower would swing it into a horizontal position, and lower it onto the platform, and then release the rope, and one of them would then go to either end and they would slide or lift it off the platform onto other beams and out of their way. While thus doing this, assisting in moving a beam out of the way or preparing to do so, the decedent must have in some manner lost his balance; for he fell through the opening and received injuries which resulted in his death.

The charge of negligence pointed out in the instructions given by the court to the jury was the failure of the defendant to furnish decedent with a reasonably safe place in which to work. Counsel for the defendant duly excepted to this instruction. It is well settled that that rule of law is not applicable when the employés, as the work

progresses, are constantly making and changing the place, which was the case here.

The court, also, at request of counsel for plaintiff, instructed the jury, in effect, that this block and fall constituted an elevating machine or hoisting apparatus, within the provisions of section 20, c. 415, p. 468, of the Laws of 1897 as amended by chapter 192, p. 351, of the Laws of 1899, and that the failure of defendant to cause the opening in the floors to be inclosed or fenced in as required thereby was some evidence of negligence on its part. Counsel for defendant duly excepted, and requested the court to instruct the jury that the statute was not applicable, and excepted to the refusal of the court to so charge. We are of opinion that this was error, for the reason that the third floor had not been laid, and therefore the statute imposed no duty at that time with respect to inclosing or fencing the opening. The statute provides as follows:

"If elevating machines or hoisting apparatus are used within buildings in the course of construction for the purpose of elevating material to be used in such construction, the contractors or owners shall cause the shafts or openings in each floor to be inclosed or fenced in on all sides by a barrier at least eight feet in height."

This statute manifestly was not designed to protect the men employed in unloading the material at the top of a shaft or opening from falling into it, but rather to protect others working or lawfully on a floor which had been laid up to the shaft or opening from walking into it, and to protect all lawfully on the premises against falling material. This was neither a shaft nor an opening in the third floor, on which only the walls and girders and part of the floor beams had been laid, within the contemplation of the statute.

The judgment and order should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.