this action is based, to transfer, release, and discharge to William W. Davis, as assignee of the defendant company, "any and all merchandise in the said written agreement, and also all uncollected book accounts and outstanding accounts therein mentioned, conferring upon the said William W. Davis, as assignee of the said Century Paint & Wall Paper Company, all the right, title, and interest which the said parties of the first part have or may have in and to the said merchandise and accounts outstanding, reserving, however, as aforesaid, all the rights and remedies which the said parties of the first part now have against the said William A. MacCormack." The plaintiffs further therein agreed to hold the defendants with whom the agreement was made harmless and to indemnify them and each of them against any loss on account of any claim for contribution on the part of the appellant on account of any judgment which the plaintiffs may recover against him herein. This compromise between the plaintiffs and part of the defendants was made on the 3d day of March, 1909, long after the action was at issue.

The question as to whether and to what extent this compromise and agreement is available as a defense in favor of the appellant is not presented for adjudication. The appellant claims that the plaintiffs have, at least, thereby forfeited their right to require the appellant to account for the property for which they demand an accounting in this action, but which, pending this action, they have transferred by this compromise agreement. Without the supplemental answer, the appellant would not be in a position to assert any defense on account of the compromise agreement. It is manifest therefore that he should have leave to serve the supplemental answer, and he has been guilty of no laches.

It follows therefore that the order should be reversed, with $10 costs and disbursements, and the motion granted. All concur.

---

## McHUGH v. GRAND CENTRAL BLDG. & CONST. CO.

(Supreme Court, Appellate Division, First Department. June 18, 1909.)

1. MASTER AND SERVANT (§.115*)—INJURIES TO SERVANT—NEGLIGENCE.

Since Labor Law (Laws 1897, p. 468, c. 415, as amended by Laws 1899, p. 351, c. 192, § 1, and Laws 1905, p. 1184, c. 520, § 1) § 20, requiring shafts over openings left in each floor of a building in the course of construction to be fenced in by a barrier, does not prescribe that a shaft for openings in unfinished or unfloored stories shall be guarded, defendant master was under no obligation to a servant to fence an opening where the floor had not been laid and could not have been laid at the then stage of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 205; Dec. Dig. § 115.*]

2. MASTER AND SERVANT (§ 115*)—SAFE PLACE TO WORK—BUILDINGS.

The doctrine of a reasonably safe place in which to work had no application, where the situation in a building in course of construction was constantly changing and being necessarily made unsafe by the progress of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 205; Dec. Dig. § 115.*]

Appeal from Trial Term, New York County.

Action by Katie McHugh, as administratrix, etc., against the Grand Central Building & Construction Company. From a judgment for plaintiff and from an order denying motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

John V. Bouvier, Jr., for appellant.
John F. McIntyre, for respondent.

HOUGHTON, J.  The plaintiff's intestate was an employé of the defendant, which was engaged in the reconstruction of a building partially destroyed by fire. The roof of the building had been burned away and a portion of the floors and floor timbers. It was necessary to remove portions of the flooring from the various floors in order to ascertain to what extent the timbers had been burned, and to remove those that had been destroyed, and to put new ones in their place. Masons were employed in renovating the walls and fitting the new timbers, and when plaintiff's intestate began work, two days prior to the accident, the defendant's superintendent instructed him generally to help the masons, without giving him any specific directions as to what particular thing he should do. One floor timber on each floor in direct line had been removed for the purpose of making an opening down which waste timbers could be lowered from the various floors, and up which necessary timbers and materials for repairs could be hauled. Loose planks were laid on the timbers where the flooring had been removed on the various floors, but with no effort to make a complete flooring. On the morning of the accident, a fellow laborer told the deceased that the masons wanted a horse upon which to place a scaffold plank, and told him to go up to the fourth floor and haul it up through the opening by a hand rope. The deceased stood on the bare beams and began hauling up the horse, his colaborer guiding it, when he suddenly pitched head foremost down the opening, sustaining injuries from which he shortly died. There was evidence that a derrick was installed on one of the upper floors, with block and tackle, and used for the purpose of lifting and lowering the heavy timbers, and the particular negligence of the defendant relied upon by the plaintiff to sustain her judgment is that there was a violation of section 20 of the labor law (Laws 1897, p. 468, c. 415, as amended by Laws 1899, p. 351, c. 192, § 1, and Laws 1905, p. 1184, c. 520, § 1), in failing to erect a barrier around the opening on each floor.

The defendant urged on the trial, and now insists, that this section of the labor law has no application to the situation proven, and we concur in that view. The building was in process of reconstruction. It was necessary to take up the flooring to ascertain to what extent the floor timbers had been charred and needed replacing. An opening was necessary through which to let down the damaged timbers and haul up the new ones. Floors could not be relaid until the floor timbers had been repaired. The shafts or openings in each floor could not be inclosed until the floors were laid. Section 20 of the labor law contem-

plates the laying of floors before the fencing of openings or shafts, and it specifically prescribes at what stages of the progress of the building floors shall be laid. After carefully specifying how many of the upper stories of the building may be left open without floors, and to what extent floors must be laid as the building progresses (depending upon the material used), the section then provides that the shafts or openings left "in each floor" shall be fenced in by a barrier of prescribed height and form. The statute expressly permits the specified number of top stories to remain unfloored until another story is added, and it does not prescribe that the shaft or opening in the open, unfinished, unfloored stories shall be guarded This court, in the recent case of McNeill v. Bottsford-Dickinson Co., 128 App. Div. 544, 112 N. Y. Supp. 867, expressly held that the statute imposed no duty of fencing an opening or shaft until the floor is laid, and that the manifest purpose of the statute requiring the fencing of openings was, not to protect men working at the shaft hauling or unloading materials, but to protect workmen and others using the floor from walking or falling into the opening.

The statute in terms only refers to new buildings in process of construction in cities; but, assuming that it applies also to the repairing or reconstructing of old buildings, it had no application to the situation proven in the building in which the deceased was at work, and the defendant was under no obligation as to him to fence the opening which it had made and which he was using in hoisting the material, for the floor had not been laid and could not have been at the then stage of the work. It was therefore error to permit the jury to consider whether or not the statute had been violated as an element in determining the defendant's negligence. Besides, a barrier would not have helped the deceased, for he would have been obliged to stand over the opening and inside the barrier in order to haul up the horse with a rope hand over hand as he was doing. The doctrine of reasonably safe place in which to work had no application, because the situation was constantly changing and being necessarily made unsafe by the progress of the work.

The action is in form under the employer's liability act, the notice under which is challenged. Assuming, however, the notice to be good, there is no proof of any negligence on the part of the defendant's superintendent in directing the deceased to work in a manifestly unsafe place. It was not the superintendent, but a fellow laborer, who suggested to the deceased to go to the fourth floor and to haul up the mason's horse by hand.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.